IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK MACKENZIE,<br>*Plaintiff,* | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-371 |
| | : | |
| CAPLAN INDUSRIES, INC. d/b/a<br>McDonald's | : | |
| *Defendant.* | : | |

## MEMORANDUM

Plaintiff alleges Defendant violated the Family Medical Leave Act by terminating Plaintiff four days after he informed Defendant he could return to work from FMLA leave. Defendant moves to dismiss, alleging Plaintiff failed to sufficiently plead causation between his termination and FMLA leave because the seventeen weeks between Plaintiff's request for FMLA leave and his termination are not "unusually suggestive" of a casual connection.

### I. BACKGROUND

Plaintiff began working for Defendant in 2005 and was employed as an Area Supervisor at the time of his termination. ECF No. 1 at ¶ 11. On March 29, 2018, Plaintiff alleges he suffered serious injuries from a motor vehicle accident including a "concussion and injuries to his neck, back, shoulder and right knee." *Id.* at ¶ 12. Following the incident, the Complaint alleges Plaintiff reported this accident to Doug Caplan ("Caplan"), Defendant's owner, who "instructed Plaintiff

1

to stay out of work until he was medically cleared to return." *Id.* at ¶ 13. Plaintiff alleges that "[s]hortly after the motor vehicle accident" and a discussion with Caplan, Defendant forwarded FMLA paperwork to Plaintiff's treating physician. *Id.* at ¶ 14. Plaintiff's treating physician completed and returned the required FMLA paperwork to Defendant, and Plaintiff was approved for FMLA leave. *Id.* at ¶¶ 15-16. During Plaintiff's FMLA leave, Plaintiff alleges he "regularly communicated with Mr. Caplan regarding his injuries and medical treatment." *Id.* at ¶ 17.

On July 26, 2018, seventeen weeks after Plaintiff's accident, "Plaintiff called Defendant and spoke with Nancy Henry ['Henry']."[1] ECF No. 1 at ¶ 18. "Plaintiff advised [] Henry that he was ready to return to work." *Id.* Four days later, on July 30, Plaintiff spoke again to Henry, who "told Plaintiff that he had been terminated from employment." *Id.* at ¶ 19. "Henry did not provide a clear reason for Plaintiff's termination." *Id.* "Plaintiff believes . . . that he was terminated from employment because of his use of FMLA leave." *Id.* at ¶ 20.

## II. STANDARD

When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be

---

[1] Plaintiff did not allege Nancy Henry's relationship with Defendant. *See* ECF No. 1 at ¶ 18.

drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955)). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Finally, courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id.* at 787 (alterations in original) (quoting *Iqbal*, 556 U.S. at 675). "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether

3

they plausibly give rise to an entitlement to relief.'" *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

Plaintiff alleges Defendant retaliated against Plaintiff in violation of the FMLA by terminating him within a close temporal proximity of his FMLA leave. ECF No. 1 at ¶¶ 25-26.[2] Plaintiff claims Defendant is an employer under the FMLA, Plaintiff was an FMLA eligible employee, Plaintiff exercised his rights under the FMLA since he requested and was approved for FMLA leave arising from "serious injuries," and Defendant terminated Plaintiff's employment in close temporal proximity to his protected leave. ECF No. 1 at ¶¶ 12, 22-24.[3]

Defendant moves to dismiss the Complaint, claiming Plaintiff has not shown a casual connection between Plaintiff's protected activity and the adverse employment action because the seventeen weeks between Plaintiff's request for FMLA leave and his termination is too long a time period to establish a casual connection. ECF No. 9-1 at 6-7. In his response, Plaintiff contends he was

---

[2] Plaintiff has withdrawn the interference claim alleged in the Complaint, conceding "this matter is more appropriately framed as a claim for FMLA retaliation." ECF No. 13 at 1-2.
[3] Plaintiff contends in the Complaint that Defendant retaliated against Plaintiff by terminating him in close temporal proximity to his request for FMLA leave. ECF No. 1 at ¶ 25. However, in Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff argues Defendant retaliated because Plaintiff took FMLA leave. ECF No. 13 at 4.

4

"terminated from employment within days of informing Defendant that he was ready to return to work following his FMLA leave." ECF No. 13 at 4.

The Family and Medical Leave Act was designed to "balance the demands of the work place with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1)-(2). Prior to the statute, "there [was] inadequate job security for employees who ha[d] serious health conditions that prevent[ed] them from working for temporary periods." 29 U.S.C. § 2601(a)(4). Now, employees eligible for FMLA leave are "entitled to a total of 12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612(a)(1). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of . . . any right" delineated in the FMLA. 29 U.S.C. § 2615(a)(1). Employers cannot "discriminate against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2).

FMLA retaliation claims "arise under 29 U.S.C. § 2615(a)(2)." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009). "They prohibit an employer from 'discriminating or retaliating against an employee . . . for having exercised . . . FMLA rights." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (quoting 29 C.F.R. § 825.220(c)). "[T]o permit employees to take leave from work for certain family and medical reasons and to return to the same or equivalent job at the conclusion of that leave' would be undermined if

5

retaliation were not prohibited." *Egan v. Del. River Port Auth.*, 851 F.3d 263, 271 (3d Cir. 2017).

To establish a prima facie retaliation claim under the FMLA, Plaintiff must prove (1) he "invoked [his] right to FMLA-qualifying leave," (2) he "suffered an adverse employment decision," and (3) there was a casual connection between the protected activity and the adverse action. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012); *see also Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). Both parties agree to assume Plaintiff has proven elements (1) and (2) for the purposes of a motion to dismiss. ECF No. 1 at ¶¶ 24-25; ECF No. 9-1 at 2.

A plaintiff may establish a casual connection between protected activity and an adverse action either through (a) "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," or (b) "a pattern of antagonism coupled with timing to establish a casual link." *Budhun*, 765 F.3d at 258 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

In this case, Defendant claims Plaintiff has failed to show that the timing between the protected activity and his termination supports a causal connection, since the seventeen weeks between Plaintiff's request for FMLA leave and his

6

termination are not "unduly suggestive" of retaliatory motive. ECF. No 9-1 at 6-7. By claiming the seventeen weeks between Plaintiff's request for FMLA leave and Plaintiff's termination are not "unusually suggestive" temporal proximity, Defendant analyzes the protected activity alleged in the Complaint as Plaintiff's *request* for FMLA leave. *See* ECF No. 9-1 at 7.

In contrast, Plaintiff contends the *entire* seventeen weeks of leave is the protected activity, and therefore the Court must consider the time between the end of the seventeen weeks of leave and the date Plaintiff was terminated to determine whether there is unduly suggestive temporal proximity and therefore a causal connection. ECF No. 13 at 4.[4]

Temporal proximity between the protected activity and adverse employment action "provides an evidentiary basis from which an inference can be drawn" to prove causation. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (quoting *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 178 (3d Cir. 1997)). "Qualifying employees are guaranteed 12 weeks of unpaid leave each year by the Family and Medical Leave Act." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 84 (2002). When eligible employees return from their FMLA leave, they

---

[4] In the Complaint, Plaintiff states the retaliation is for Plaintiff's request for FMLA leave; however the Complaint alleges facts sufficient to show twelve weeks of Plaintiff's leave were FMLA protected as well and should be considered for the purposes of temporal proximity. ECF No. 1 at ¶¶ 12-20, 25.

7

must "be restored by the employer to the position of employment held by the employee when the leave commenced" or be given "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614 (a)(1)(A)-(B). The FMLA protects employees from employer retaliation by: (1) "prohibit[ing] employers from discriminating against employees who *request* FMLA protected leave" and (2) "prevent[ing] employers from denying employment to employees once they *return from* an FMLA leave period." *Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 190 (3d Cir. 1997) (emphasis added).

Because FMLA leave is a protected activity, the temporal proximity analysis may begin at the point the plaintiff "exhausted his twelve weeks of FMLA leave." *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 587-88 (ED Pa. 2017) (considering the date FMLA leave was exhausted as the point the temporal proximity analysis begins). Temporal proximity "must be 'unusually suggestive' of retaliatory motive before a casual link will be inferred." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 n.9 (3d Cir. 2003) (quoting *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).

The Third Circuit has "ruled differently on th[e] issue [of temporal proximity in retaliation cases] in [its] case law, depending . . . on how proximate the events actually were, and the context in which the issue came before [it]."

8

*Farrell*, 206 F.3d at 279. The Third Circuit has held that "two days between the protected activity engaged in and the alleged retaliation sufficed . . . to support an inference of a causal connection between the two," but two months "is not so close as to be unduly suggestive." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989)).

Because Plaintiff was on leave for 17 weeks, only the initial twelve weeks of Plaintiff's leave are protected by the FMLA. The last five weeks of Plaintiff's leave are not protected under the FMLA. *See Ragsdale*, 535 U.S. at 84; *Reyer*, 243 F. Supp. 3d at 587-88. Therefore, the Court will analyze temporal proximity beginning on the last day of Plaintiff's initial twelve weeks of leave. *Reyer*, 243 F. Supp. 3d at 587-88.

Five weeks elapsed between that time, i.e. the exhaustion of the twelve weeks of protected FMLA leave, and the date Plaintiff was terminated. *See* ECF No. 1 at ¶¶ 12-19. Five weeks between the protected activity and the adverse employment action falls between the Third Circuit's 2-days to 2-months time-frame for unusually suggestive temporal proximity. *See Williams*, 380 F.3d at 760. Furthermore, Plaintiff alleges he stayed in contact with Defendant during and after his initial twelve weeks of FMLA leave, and Defendant told Plaintiff to stay out of work until he was medically cleared to return. *See* ECF No. 1 at ¶¶ 12-19.

9

Therefore, at the motion to dismiss stage, Plaintiff has provided sufficient evidence to support an inference of a casual connection between his protected FMLA leave and his employment termination. Consequently, Defendant's motion to dismiss is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 9) is denied. An appropriate order will follow.

BY THE COURT:

DATE: 7-15-2019

CHAD F. KENNEY, JUDGE